**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
Email: mkane@mcguirewoods.com
Michael D. Mandel, Esq. (SBN 216934)
Email: mmandel@mcguirewoods.com
John A. Van Hook, Esq. (SBN 205067)
Email: jvanhook@mcguirewoods.com
Sylvia J. Kim, Esq. (SBN 258363)
Email: skim@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:   (310) 315-8200
Facsimile:   (310) 315-8210

Attorneys for Defendant
BANK OF AMERICA, N.A.

**BRYAN SCHWARTZ LAW**
Bryan J. Schwartz (SBN 209903)
Email: bryan@bryanschwartzlaw.com
Eduard R. Meleshinsky (SBN 300547)
Email: eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

Attorneys for Plaintiffs Allen Buckingham, Eunice Ann Robinson,
Alvin Courts, and Melissa Agosto-Cruz

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allen Buckingham, Eunice Ann Robinson, Alvin Courts, and Melissa Agosto-Cruz, individually, and on behalf of others similarly situated,<br><br>                 Plaintiffs,<br><br>        vs.<br><br>Bank of America, N.A.,<br><br>                 Defendant. | CASE NO. 3:15-cv-6344-RS<br><br>**JOINT STIPULATION TO AMEND JOINT STIPULATION FOR SETTLEMENT AND RELEASE OF CLASS AND COLLECTIVE ACTION CLAIMS AND TO CORRECT RECORD GRANTING PRELIMINARY APPROVAL OF SETTLEMENT; [Proposed] ORDER**<br><br>**Complaint Filed: December 31, 2015** |

WHEREAS on November 1, 2016 the above-referenced parties and their counsel executed a comprehensive Joint Stipulation for Settlement and Release of Class and Collective Action Claims (the "Settlement Agreement");

WHEREAS on January 26, 2017, the Court in this matter preliminarily approved the Settlement Agreement, with a suggestion about making a minor amendment to provide for a secondary allocation of unclaimed funds;

WHEREAS following the Court's granting of preliminary approval, the parties agreed to truncate the class period to eliminate weeks following Defendant's reclassification of the position at issue, and the parties discovered a discrepancy in the number of class members;

WHEREAS the Settlement Agreement defined four Rule 23 classes, encompassing employees and state law claims for the states of California, North Carolina, Connecticut, and Illinois (*see* Dkt. #77-1, ¶¶ 2-5);

WHEREAS the Settlement Agreement defined the members of each of the four Rule 23 classes as including all persons who worked for Defendant in the relevant job code in each of the four respective states from the beginning of the applicable state law limitations period through the date of preliminary approval (*see* Dkt. #77-1, ¶¶ 2-5 and 7);

WHEREAS the Settlement Agreement provides for an allocation for individual settlement shares for each person who participates in the settlement based on the number of workweeks they accrued during the "Class Period," as defined in the Settlement Agreement;

WHEREAS the term "Class Period" in the operative settlement agreement presently counts workweeks accruing *after* Defendant's reclassification of current Client Fulfillment Consultants as non-exempt employees eligible to receive overtime premium pay, which occurred on October 17, 2016;

WHEREAS, in the Settlement Agreement, the description of the weighting of workweeks for the FLSA Collective and Rule 23 classes was potentially ambiguous as to Class Members that worked in multiple states during the Class Period (*see* Dkt. #77-1, ¶ 9);

WHEREAS the Settlement Agreement recites that there were "approximately 478 total class members in this suit as of September 30, 2016" (Dkt. #77-1, ¶ 1);

WHEREAS through Defendant's inadvertent error, approximately 52 people were omitted from the estimate of the population of 478 Class Members – approximately 32 of the 52 people are people who moved into the relevant job code in the approximately two months leading up to the execution of the Settlement Agreement and the other 20 people only worked for Defendant in the fourth year prior to the filing of the lawsuit (i.e., the first year of the class period for the California state law claims class);

WHEREAS even though there were approximately 52 people omitted from the previous estimate of 478 Class Members, those 52 people represent only approximately 2% of the total workweeks of all Class Members;

WHEREAS the Parties have confirmed that one individual who opted into the FLSA collective action lacks any workweeks within the statutory period for the FLSA collective action;

WHEREAS the parties previously had agreed to a reserve fund of $150,000 (Dkt. #77, Schwartz Decl. in Support of Preliminary Approval Motion, ¶24) to address any data errors affecting the estimated allocation amounts, and this amount appears more than sufficient to cover payment for the claims of the additional 52 people;

WHEREAS Defendant has agreed to pay an amount in addition to the prior

consideration offered of $6,600,000 to address any additional data errors that arise that are verified through the notice and claims process contemplated in the Settlement Agreement;

WHEREAS the addition of a secondary allocation, and resolving the data errors, have caused additional estimated costs from the settlement administrator; and

WHEREAS even though these amendments will result in slight delays to the mailing of notices to Class Members (originally scheduled to be mailed on March 6, 2017), and comparable delays to other settlement administration events, the final fairness hearing, scheduled for June 29, 2017, should be unaffected by these issues.

WHEREAS the parties wish to bring these matters to the Court's attention and correct the record;

THEREFORE pursuant to paragraph 104 of the Settlement Agreement, the parties' counsel do hereby amend the Settlement Agreement, as follows: (For ease of reference, the changes from the original Settlement Agreement are in **bold/underline.**)

**Paragraph 1 (last sentence) shall be amended to read as follows:**

There are approximately **529** total Class Members in this suit.

**Paragraphs 2-6 shall be amended to read as follows:**

2.     The California Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of California from December 31, 2011 through **October 17, 2016**."

3.     The North Carolina Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066,

which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of North Carolina from December 31, 2013 through **October 17, 2016**."

4. The Illinois Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of Illinois from December 31, 2012 through **October 17, 2016.**"

5. The Connecticut Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of Connecticut from December 31, 2013 through **October 17, 2016**."

6. The FLSA Collective shall be: "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, from December 31, 2012 through **October 17, 2016** and who timely joins the Collective Action."

**Paragraph 7 shall be amended to read as follows:**

7. "Class Period" means from December 31, 2011 through **October 17, 2016** for the California Class; December 31, 2013 through **October 17, 2016** for the North Carolina and Connecticut Classes; December 31, 2012 through **October 17, 2016** for the Illinois Class; and February 9, 2013 (pursuant to the Parties' Tolling Agreement) through **October 17, 2016** for the FLSA Collective.

**Paragraph 9 shall be amended to read as follows:**

8. "Adjusted Eligible Workweeks" for each Class Member shall mean the number of weeks in which each Class Member was actively employed (*i.e.*, not

on a leave of absence) as an Implementation Advisor during the Class Period, according to Defendant's personnel records, adjusted depending upon whether the Class Member was employed in California, North Carolina, Illinois, Connecticut, or a different state for that week. **For each week worked by a Class Member in North Carolina** during the Class Period, the number of weeks shall be multiplied by 0.5; **for each week worked by a member of the FLSA Collective or a week worked by a Class Member in Connecticut** during the Class Period, the number of weeks shall be multiplied by 1.0; **for each week worked by a Class Member in Illinois**, the number of weeks shall be multiplied by 1.1; **for each week worked by a Class Member in California** during the Class Period, the number of weeks shall be multiplied by 1.50. The foregoing multipliers are intended to account for the increased potential value of the claims of members of the California and Illinois Classes in light of additional claims asserted on behalf of those individuals, the lack of overtime protection under North Carolina's wage statute, and variances between the relevant state wage and hour laws and the FLSA. If a Class Member – other than a member of the Illinois Class or FLSA Collective – signed a severance agreement and Release of Claims on or before September 30, 2016, then his or her workweeks will be reduced by 10%, after any increases or decreases to the same described earlier in this paragraph, to account for the litigation risk associated with such a release. If a Class Member is a member of two or more Classes, that Class Member's Adjusted Eligible Workweeks shall be the sum of the Adjusted Eligible Workweeks within the relevant Classes during the Class Period provided that no such workweeks overlap in time period. If a Class Member is a member of both the FLSA Collective and a State-Law Class for an overlapping period of time, then the Class Member's allocation will be determined by reference to a workweek multiplier that results in a higher allocation. For example, an Illinois Class Member

who also opted into the FLSA Collective will be entitled to a 1.1 multiplier for his or her Illinois work weeks rather than the 1.0 multiplier applicable to weeks solely in the FLSA Collective. Similarly, a North Carolina Class Member who also opted into the FLSA Collective will be entitled to a 1.0 multiplier for his or her North Carolina work weeks rather than a 0.5 multiplier applicable to weeks worked in the North Carolina Class.

**Paragraph 11 (last sentence) shall be amended to read as follows:**

The fees and costs of the Claims Administrator are capped at **$33,277**, per an agreement with Class Counsel, and shall be referred to as the "Claims Administration Charges."

**Paragraph 20 shall be amended to read as follows:**

20.     "Gross Settlement Amount" means Six Million Six Hundred Thousand Dollars ($6,600,000), the total sum that Defendant will be paying for the settlement of the Lawsuit and the Released Claims (as defined below) in accordance with the terms of this Agreement, except that Defendant will separately pay the amount of the employer's share of any payroll taxes that arise from any payments to any Class Members pursuant to this Agreement**, and except that Defendant will separately pay to compensate Class Members to resolve any disputes based upon data errors that are verified through the process outlined in Paragraph 75, or for any additional Class members added over and above the included 529 Class Members according to his or her class-specific per workweek amount**.

**Paragraph 53 (first sentence) shall be amended to read as follows:**

53.     Without admitting any liability whatsoever, Defendant will settle the Plaintiffs' and Class Members' claims released by this Agreement by depositing, within 15 days of the order granting final approval of the settlement (unless one of

the conditions in Paragraph 18(c), above, occurs, in which case the timing shall be as indicated), a total of $6,600,000 (Six Million Six Hundred Thousand Dollars) (the Gross Settlement Amount), plus the full amount necessary to pay the employer's share of payroll taxes on the wage portions of settlement payments, as estimated by the Claims Administrator, **plus the amount necessary to resolve disputes based upon data errors that are verified  through the process outlined in Paragraph 75 or for any additional Class Members added over and above the 529 Class Members according to his or her class-specific per workweek amount**, into a qualified settlement fund, which shall be established and administered by the Claims Administrator (the "Qualified Settlement Fund").

   **Paragraph 65 shall be amended to read as follows:**

   65.    The allocations of any Class Members who opt out of and/or withdraw from the settlement ("unclaimed funds") will be allocated *pro rata* to the Settlement Class Members at the time of settlement disbursement. **[Remainder of paragraph 65 modified/moved to paragraph 84.]**

   **Paragraph 84 shall be amended to read as follows:**

   84.    **If there are any payments made to Class Members that remain uncashed one hundred twenty (120) days after the initial mailing of payments, all such checks shall be voided and their amounts shall revert to the Qualified Settlement Fund, so that the amount of those checks can be allocated as follows: (1) if the amount of total unclaimed funds exceeds $50,000, the funds shall be redistributed in a second allocation to the Class Members who did negotiate their checks, in proportion to their respective Net Pro Rata distribution; or (2) if the amount of unclaimed funds is less than or equal to $50,000, then the unclaimed funds shall be disbursed to the *cy pres* recipient, Legal Aid Society – Employment Law Center (now known as Legal Aid at**

1  Work), subject to Court approval, within ten (10) days after the expiration of

2  the 120-day period, with notice provided to counsel for Defendant and

3  Plaintiffs. Sixty (60) days after any second allocations are mailed, any

4  uncashed second allocation checks shall be voided and their amounts shall

5  revert to the Qualified Settlement Fund, for distribution within ten (10) days

6  to the *cy pres* recipient.

7  **The proposed notices shall be modified as follows:**

8  Each notice shall be modified to comport with the class periods and

9  increased administrative cost stated above. Each notice shall further be modified to

10  include the current final fairness hearing date of June 29, 2017. The proposed

11  notice for the Illinois class shall be modified to remove reference to releases

12  because it is inapplicable to this class. Submitted herewith as Exhibit A are the

13  revised notices reflecting the foregoing modifications.

March 8, 2017

BRYAN SCHWARTZ LAW
Bryan Schwartz
Counsel for Plaintiffs

March 8, 2017

McGUIREWOODS
Counsel for Defendant

8

[Proposed] ORDER

Pursuant to the Parties' JOINT STIPULATION TO AMEND JOINT STIPULATION FOR SETTLEMENT AND RELEASE OF CLASS AND COLLECTIVE ACTION CLAIMS AND TO CORRECT RECORD GRANTING PRELIMINARY APPROVAL OF SETTLEMENT (the "Stipulation"), it is SO ORDERED.

Subject to the amendments described in the Parties' Stipulation, the Court's Order Granting Preliminary Settlement Approval (Dkt. #87) is reaffirmed.

The Parties are ordered to promptly effectuate the mailing of the notices to Class Members.  All other settlement administration dates shall follow from the new date of the mailing of the notices.  The final fairness hearing shall remain on calendar for June 29, 2017 at 1:30 p.m.

Dated: 3/9/17

Hon. Richard G. Seeborg
United States District Court
Northern District of California

9