# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| ALLEN BUCKINGHAM, EUNICE ANN ROBINSON, ALVIN COURTS, and MELISSA AGOSTO-CRUZ, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, National Association,<br><br>Defendant. | Case No.: 3:15-cv-6344-RS<br><br>**[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)** |

This matter, a wage and hour class and collective action under the federal Fair Labor Standards Act (FLSA) and several state laws, comes before the Court on plaintiffs' motion for final approval of class action settlement (ECF No. 96), and motion for payment of attorney fees and costs (ECF No. 92). A hearing was held on June 29, 2017.

The Court has reviewed and considered the record in this matter, including the memorandum and declarations submitted in support of the motion for preliminary approval and the exhibits attached thereto; the proposed settlement agreement and each of the class notices; Plaintiffs' motion for final approval of the Settlement Agreement; the memorandum in support of the motion for final approval submitted by plaintiffs; and the memorandum and declarations submitted in support of the fee petition.

Good cause appearing, the Court GRANTS the final approval and fee motions. The Court's order is based upon the following:

## I.     BACKGROUND

Plaintiffs were Client Fulfillment Consultants (CFCs) (also called Implementation Advisors), employees in the treasury services department of defendant Bank of America, N.A. ("BANA"), who allege they were misclassified as exempt from overtime. They now seek final approval of a class-wide settlement that achieves a common fund, in addition to prospective relief for the class.

On January 26, 2017, this Court granted preliminary approval of this settlement, certifying the settlement class, preliminarily approving the settlement, and ordering dissemination of notice to class members (ECF No. 87). This Court granted the parties' amendment to this settlement on March 9, 2017 (ECF No. 91).

The claims administrator provided notice in accordance with this Court's order. Out of the 529 initial class members, only one class member requested exclusion from the class, and no objections were filed. This settlement will result in recovery of $6.6 million for class members, in addition to the reclassification of the vast majority of currently employed class members and other current CFCs as non-exempt. Under the settlement, defendant will deposit the settlement fund

[~~proposed~~] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)

1

with the claims administrator within 15 days of this Order, and class members will receive their pro-rata allocations shortly thereafter by mail.

## II. SUMMARY OF SETTLEMENTS

### A. Settlement Terms

The proposed settlements resolve all wage-and-hour claims against defendant stemming from its alleged misclassification of CFCs. The settlement classes are defined as follows (ECF No. 91 at 3-4):

The California Class shall be "All persons who are or who have been employed by defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of California from December 31, 2011 through October 17, 2016."

The North Carolina Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of North Carolina from December 31, 2013 through October 17, 2016."

The Illinois Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of Illinois from December 31, 2012 through October 17, 2016."

The Connecticut Class shall be "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, within the State of Connecticut from December 31, 2013 through October 17, 2016."

The FLSA Collective shall be: "All persons who are or who have been employed by Defendant as exempt employees in its internal job code CI066, which includes the job titles Implementation Advisors and Client Fulfillment Consultants, from December 31, 2012 through October 17, 2016 and who timely joins the Collective Action."

[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)

2

The proposed settlement classes mirror the classes certified for settlement purposes by this Court on January 26 and March 9, 2017.

### B.     The Settlement Consideration

Under the proposed settlement, defendant will pay a total of $6.6 million in cash, in addition to the employer share of payroll taxes. Defendant also committed to reviewing all CFCs and either (1) reclassifying current CFCs as non-exempt, or (2) modifying their job duties, all of which it completed last year.

### C.     Release of Claims

Class members will release all federal and state-law wage-and-hour claims against defendant if the settlement becomes final, relating to the conduct alleged in plaintiffs' complaint, including:

> [C]laims, demands, rights, liabilities, and causes of action that were asserted in the Second Amended Complaint ("SAC") in the Lawsuit on behalf of Implementation Advisors and any additional wage and hour claims that could have been brought based on the facts alleged in the SAC on behalf of Implementation Advisors. The Released Claims include all claims relating to or arising out of the designation and treatment of the Class Representative and Class Members as "exempt" from overtime compensation while they worked as Implementation Advisors, including claims for violations of any state or federal statutes, rules, or regulations. This includes, but is not limited to, claims that, during the Class Periods, Defendant failed to pay overtime or any other wages due under California, North Carolina, Illinois, or Connecticut state laws; failed to pay overtime or any other wages due under the Fair Labor Standards Act; failed to provide legally-required meal and rest periods or pay wages due for such failure; failed to timely furnish accurate itemized wage statements; engaged in conduct subjecting Defendant to any statutory or civil penalties under any statute, ordinance, or otherwise arising from or related to the classification of Plaintiffs and Class Members as exempt from overtime, including, without limitation, California Labor Code section 2698, et seq. and Labor Code sections 203 and 226; engaged in any unfair business practices arising from the misclassification alleged; and failed to pay all wages due to Class Representative and Class Members upon termination of employment.

ECF No. 77-1 at ¶ 26. Class representatives Buckingham, Robinson, Courts, and Agosto-Cruz will execute a general release of claims related to their employment with defendant, unlike absent class members. *Id.*

**[proposed]** ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)

3

### III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

In order to approve a settlement in a class action, the court must conduct a three-step inquiry. *First*, it must assess whether defendants have met the notice requirements under the Class Action Fairness Act (CAFA). *See* 28 U.S.C. § 1715(d). *Second*, it must determine whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. *Finally*, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); *Adoma v. Univ. of Phoenix. Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry). Each of these requirements is met here.

#### A. The Parties Have Complied with the Class Action Fairness Act

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" *See* 28 U.S.C. § 1715(b). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. *See* 28 U.S.C. § 1715(d). Here, defendant timely provided the required CAFA notice. No Attorneys General have submitted statements of interest or objections in response to these notices.

#### B. The Settlement Class Meets All Requirements of Rule 23(e)

In its order granting preliminary approval, and its order certifying the class on January 26, 2017 (ECF No. 87), the Court certified the class pursuant to Rule 23(b)(3). The same analyses apply here, and the Court affirms its order certifying the class for settlement purposes under Rule 23(e).

#### C. The Parties Have Complied with Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including

[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)

4

1 individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B).

2 The proposed notice plan was undertaken and carried out pursuant to the preliminary approval order. The notice administrator provided direct notice via mail and, where possible, e-mail (obtained from defendant) to class members. In addition, the notice administrator established a toll-free telephone number that class members could contact with any questions. Plaintiffs' counsel also made a case website publicly available which contained the full settlement agreement, the operative complaint, the Court's order granting preliminary approval to this settlement, plaintiffs' motion for preliminary approval, plaintiffs' motion for attorney fees and costs, and the notices.

The Court previously found that the notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements (ECF Nos. 87, 91). Plaintiffs have complied with all of the requirements of Rule 23 and have complied with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### D. The Proposed Settlement is Fair, Adequate and Reasonable

The Court may approve a settlement that is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The factors typically considered when evaluating the fairness of a settlement agreement are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "[W]here, as here, a settlement is

**[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)**

5

negotiated prior to formal class certification, consideration of the[ ] eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946. The award must also be scrutinized for evidence of collusion between class counsel and the defendant, including: "when counsel receive a disproportionate distribution of the settlement"; "when the parties negotiate a 'clear sailing' arrangement"; and "when the parties arrange for fees not awarded to revert to defendants." *Id.* at 947.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining a proper attorney fees award. *In re Bluetooth*, 654 F.3d at 942. Under the percentage-of-recovery method, the Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029. Yet the lodestar method, which multiplies "the number of hours reasonably expended by a reasonable hourly rate," *id.*, also produces a "presumptively reasonable" fee award, *Bluetooth*, 654 F.3d at 941. Although the Court has discretion to use either method, in either case the Ninth Circuit encourages a cross-check with the alternative method in order to ensure the reasonableness of any award. *Id.* at 944. The Court may also award reasonable litigation costs. *Id.* at 941.

The proposed settlement is sufficiently fair, reasonable, and adequate to qualify for final approval. The settlement secures a substantial recovery for the plaintiff class members — 35% of the case's arguable value of over $18 million — and resulted in reclassification of hundreds of class members as nonexempt from the overtime laws at issue. Like the monetary reward, the reclassification of CFCs as nonexempt represents something of value to the class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("the litigation also benefitted employers and workers nationwide by clarifying the law of temporary worker classification . . . many workers who otherwise would have been classified as contingent workers received the benefits associated with full time employment").

Other factors favoring approval include the inherent risks of litigation, and the fact that plaintiffs' theories of liability have apparently never been tested for CFCs. Moreover, plaintiffs'

**[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)**

6

1  recovery under the FLSA and California Labor Code would be diminished if they could not prove
2  BANA willfully misclassified them as exempt, and BANA could bar or diminish the value of
3  many claims if it successfully raised a good faith defense. Likewise, the settlement was reached
4  with the assistance of an experienced mediator. Finally, there are not strong indicia of collusion
5  between class counsel and the defendant: proposed attorney fees are at the 25% benchmark and
6  are not disproportionate to the common fund, *see infra* Part IV, and there is no reversion of
7  unclaimed funds to defendants.

8  There is, however, a "clear sailing" provision, which is to be viewed with disfavor,
9  notwithstanding the fact the settlement agreement is not predicated on approval of the fee request.
10 *See Bluetooth*, 654 F.3d at 948. Yet the theoretical problem with a "clear sailing" provision is that
11 it "increases the likelihood that class counsel will have bargained away something of value to the
12 class," *id.*, a circumstance which does not appear to have occured, given that the class members
13 are set to receive substantial compensation (and non-monetary benefit in the form of
14 reclassification), no class members have objected, and class counsel is seeking fees at the
15 benchmark percentage.

16                                             * * *

17 In summary, the proposed settlement is fair, reasonable and adequate is approved.

18 **IV.    ATTORNEY FEES AND COSTS**

19 Although the request for attorney fees is at the presumptively acceptable 25% benchmark,
20 *see Bluetooth*, 654 F.3d at 942, it should nonetheless be cross-checked according to the lodestar
21 method. Class counsel has thus far expended 806.7 hours on this action. Billed at rates of $675 to
22 $375 per hour for attorneys, and $200 to $150 per hour for law clerks, paralegals, and
23 administrative support, the hours worked result in a lodestar calculation of $310,917.50, meaning
24 the requested $1,650,000 in attorney fees is a 5.31-times multiple of the lodestar. (Class counsel
25 represents that, after all its work in this matter is complete, the attorney fees request will amount a
26 4.89-time multiple of the lodestar.)

27

28  **[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)**

7

1   Class counsel's billing rates are clearly reasonable for the market; similar and higher rates
2   have been approved in this District. *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-
3   CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable
4   hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for
5   paralegals and litigation support staff from $150 to $240."). The multiple, meanwhile, is certainly
6   on the high side, but is not fatal. *See Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir.
7   2007) (citation omitted) ("Although this [6.85 times] multiplier is higher than those in many
8   common fund cases . . . it still falls well within the range of multipliers that courts have
9   allowed.").

10   Similar multiples have been approved in this District. *See, e.g.*, *Gutierrez v. Wells Fargo
11   Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015)
12   ("Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved
13   on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts,
14   and the delay in payment."); *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181
15   (N.D. Cal. 2014) ("Furthermore, plaintiffs are correct that the resulting [3.62 times] multiplier
16   necessary to reach a $15.9 award would not be out of bounds, given the success they achieved in
17   this action and the other relevant factors."). While the multiple is high, class counsel has achieved
18   substantial recovery for the class, and the lack of objections and opt-outs indicates the class is
19   pleased with the results. Accordingly, and because the fee request is at the 25% benchmark, the
20   motion for attorney fees is granted.

21   Class counsel also seeks $15,000 in costs. Most of the claimed costs are from mediation
22   fees ($6,250), mailing notices and reminders ($4,043), and conducting depositions ($2,280.45).
23   The remaining $2,785.04 is for travel, document reproduction, legal research, and other litigation
24   costs. This cost request is reasonable, and is granted.

25   **V.   SERVICE AWARDS FOR CLASS REPRESENTATIVES**

26   Plaintiffs request service awards in the amount of $15,000 for plaintiff Buckingham, and
27   $2,500 each for plaintiffs Robinson, Courts, and Agosto-Cruz, to be deducted from the gross

28   **[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)**

8

common fund. In the Ninth Circuit, service awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, the four class representatives have spent a significant amount of time assisting in the litigation of this case. Plaintiff Buckingham sat for a full-day deposition and attended the parties' mediation in person. Each class representative provided relevant information to plaintiffs' counsel, reviewed the settlement agreement to ensure it was in the best interest of the class, and, more generally, took a reputational risk by representing the other class members. The class representatives made these efforts on behalf of class members without receiving the benefits of the reclassification, because they are all former employees. Moreover, each class representative executed a broader release than absent class members, warranting additional consideration. The requested awards are therefore approved.

## VI. THE REQUESTED CY PRES IS APPROPRIATE

The requested *cy pres* beneficiary, Legal Aid at Work (formerly called Legal Aid Society-Employment Law Center), meets the test under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012), "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." This suit seeks to enforce wage protections for workers. Legal Aid at Work (https://legalaidatwork.org), provides direct legal services for low-wage workers in California. Accordingly, the beneficiary is approved.

## VII. CONCLUSION

The Court hereby enters Judgment approving the terms of the Settlement. This document shall constitute a final judgment with respect to the Claims of the Settlement Class for purposes of Rule 58 of the Federal Rules of Civil Procedure, and the Settlement Class Members are barred and permanently enjoined from initiating or prosecuting the Released Claims as defined in the Agreement.

**[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)**

9

1  The claims of the Settlement Class Members are hereby DISMISSED WITH PREJUDICE, with each party to bear his, her, or its own attorney fees and costs, except as set forth herein, and with this Court retaining exclusive jurisdiction to enforce the Settlement Agreement, including jurisdiction regarding the disbursement of the Settlement Fund. Without affecting the finality of this Order and Final Judgment, the Court retains jurisdiction over the Class Representatives, the Settlement Class, and the Defendant as to all matters concerning the administration, consummation, implementation, interpretation, and enforcement of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: July 11, 2017

_____
HON. RICHARD SEEBORG
UNITED STATES DISTRICT COURT

[proposed] ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ATTORNEY FEES AND COSTS (AS MODIFIED BY THE COURT)

10